IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL CASE NO. |
| | : | 1:05-CR-00621-CAP-JMF |
| v. | : | |
| | : | ORDER FOR SERVICE OF |
| | : | REPORT AND RECOMMENDATION |
| ANGELA DEE ISLEY and | : | |
| JAMES ARCH NELSON | : | |
| Defendants. | : | |

Attached is the Report and Recommendation of the United States Magistrate
Judge made in this action in accordance with 28 U.S.C. § 636(b)(1) and this Court's
Local Rule 73 and LCrR 58.1.  Let the same be filed and a copy, together with a copy
of this Order, be served upon counsel for the parties.

Pursuant to 28 U.S.C. § 636(b)(1), each party may file written objections, if any,
to the Report and Recommendation within ten (10) days of the receipt of this Order.
**In connection therewith, the aforesaid ten-day period, plus three days for mailing,
shall be excluded from the Speedy Trial Act (18 U.S.C. § 3161, et seq.)
computation, regardless of whether such party files any such objection.**  Should
objections be filed, they shall specify with particularity the alleged error or errors
made (including reference by page number to the transcript if applicable) and shall
be served upon the opposing party.  The party filing objections will be responsible
for obtaining and filing the transcript of any evidentiary hearing for review by the

district court.  If no objections are filed, the Report and Recommendation may be adopted as the opinion and order of the district court and any appellate review of factual findings will be limited to a plain error review.  <u>United States v. Slay</u>, 714 F.2d 1093 (11th Cir. 1983), <u>cert</u>. <u>denied</u> 464 U.S. 1050, 104 S.Ct. 729, 79 L.Ed.2d 189 (1984).

The Clerk is directed to submit the Report and Recommendation with objections, if any, to the district court after expiration of the above time period.

**IT IS SO ORDERED**, this 20th day of OCTOBER 2006.


S/   JOEL M. FELDMAN
JOEL M. FELDMAN
UNITED STATES MAGISTRATE JUDGE

2

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | CRIMINAL CASE NO. |
| v. | : | 1:05-CR-621-CAP-JMF-1 |
| | : | |
| ANGELA DEE ISLEY and | : | |
| JAMES ARCH NELSON, | : | |
| | : | |
| Defendants. | **:** | |

MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION AND ORDER

Part One                                     History of the Case

The defendants, who are (or were) owners and operators of a durable medical equipment company, have been charged with 37 counts of engaging in a scheme to defraud Medicare and the Federal Employee Health Benefit Program, in violation of 18 U.S.C. §1347 and §2.  Presently pending before the undersigned are  three Motions to Dismiss the Indictment, filed by defendant Isley, and adopted by defendant Nelson, to wit:

(1) a Motion to Dismiss the Indictment contending that:

(a)     the Government's interpretation of the insurance codes and definitions for durable medical equipment (DME) do not have the force and effect of law;

(b)   18 U.S.C. §1347 is unconstitutionally vague as applied to the facts of their case; and

(c)   the Indictment seeks to impose criminal liability for the violation of an unclear legal duty.

In short, **the defendants' first *Motion to Dismiss the Indictment* contends that the DME product codes, rules and definitions relevant to the charges in the Indictment are confusing, ambiguous, unclear and inappropriate and, therefore, the defendants could not have intentionally violated them**. Therefore, they cannot be held liable for fraud.  [Isley Doc. 33; Nelson Doc. 76].  The Government has filed a Response to the defendants' first Motion to Dismiss [Doc. 53; Nelson Doc. 83]; Isley has filed a  Reply thereto [Doc. 63], to which the Government has filed a SurReply [Doc. 73].

(2) a *Motion to Dismiss Indictment due to Entrapment by Estoppel* in which the defendants contend that they reasonably relied upon the insurance carriers' approval of their payment claims for certain DME products, based on certain DME product codes.  Therefore, the government should be estopped from prosecuting the defendants now for claims approved in the past, and for continuing to use the same product codes which they used in earlier payment claims. [Isley Doc. 35; Nelson Doc. 78] The Government has

filed a Response to the defendant's Motion to Dismiss Indictment due to Entrapment by Estoppel [Isley Doc. 56; Nelson Doc. 85], and Isley has filed a Reply thereto [Doc. 65].  And,

(3) a **_Motion to Dismiss the Indictment due to alleged Fifth and Sixth Amendment Violations and Grand Jury Errors_** [Isley Doc. 36; Nelson Doc. 79], in which the defendants contend that the Indictment does not sufficiently inform them of the charges against them, or protect them against double jeopardy.  The Government's has filed a Response thereto [Isley Doc. 52; Nelson Doc. 84]; and Isley has filed a Reply thereto [Doc. 64].

Also pending before the undersigned is

(4) the defendants' **_Motion to Strike_** allegedly irrelevant and prejudicial **_Surplusage_** from the Indictment [Isley Doc. 38; Nelson Doc. 80], and the government's Response thereto [Isley Doc. 55].

<u>Background History of the Case</u>

On June 20, 2003, Sherry Ghrist, a former Orthoscript employee, filed a <u>qui tam</u>[1] lawsuit in this Court, against Orthoscript, the durable medical equipment company owned and operated by Isley and Nelson.  The Government intervened

---

[1] A <u>qui tam</u> action is an action brought under a statute that allows a private person to sue for a penalty, part of which the government or some specified public institution will receive and the private person receives the rest or a portion thereof.  Black's Law Dictionary, Seventh Edition.

therein.  See U.S. ex rel. Ghrist v. Orthoscript, et al., N.D.Ga., Civil Action No. 1:03-CV-1726-JOF.  Two years later, the Government, Ms. Ghrist and Orthoscript[2] entered into a Settlement Agreement.[3]  The Settlement Agreement specifically reserved, inter alia, that right of the United States to file claims based on "(b) any criminal liability;" and "(i) any liability of individuals, including officers and employees." Id., Section III, Reservations, ¶14.

On December 29, 2005, six months after the execution of the Settlement Agreement, the Grand Jury returned the instant Indictment charging Isley and Nelson, individually, and jointly, with 37 Counts of healthcare fraud executed between January 1, 1999 and November 30, 2003.  Specifically, the Indictment charges that Isley  (who managed Orthoscript's billing operations), aided and abetted by Nelson, knowingly and willfully assigned incorrect product codes to certain orthopedic supplies in Orthoscript's inventory (i.e., walking boots, wrist splints and arm slings), in order to receive a payment, or a higher payment than the Government had agreed to pay or which was not covered, from Medicare and FEHBP.  The Indictment also charges that Isley, aided and abetted by Nelson,

---

[2]Todd Rounsaville, Vice President, and William P. Eiselstein, Esq, Counsel for Orthoscript, signed the Settlement Agreement on behalf of Orthoscript.

[3] Orthoscript agreed, inter alia, to pay the government the sum of $832,962.90 plus interest for certain false healthcare claims it made between January 1, 1999 and December 31, 2004. [Doc. 33-2, Exhibit A].

directed their employees to charge Medicare patients higher co-payments than the co-payments which Medicare allowed for the DME that the defendants actually supplied to the patients.

Part Two                              The Issues

1.      Whether the Indictment should be dismissed because 18 U.S.C. §1347 is unconstitutionally vague, as applied to the facts of this case; and the defendants did not have adequate notice of the duty which the Government has charged them with violating, and, therefore, could not have intentionally violated any such duty.

2.      Whether  the Government should be estopped from criminally prosecuting the defendants because they reasonably relied on Medicare and FEHBP's approval of previous payment claims based on the product codes which the defendants previously used without objection.

3.      Whether the Indictment fails to fairly inform the defendants of the charges against them, in violation of the Fifth Amendment and Fed.R.Crim.P. 7(c)(1), thereby depriving them of  their constitutional right to due process (i.e., sufficient notice of the charges against them, and constitutional protection against double jeopardy).  And,

4.      Whether the Indictment contains irrelevant and prejudicial surplusage, thereby resulting in Grand Jury errors which require dismissal of the Indictment or striking such surplusage therefrom.

Part Three                              The Facts

As noted previously, the defendants operated Orthoscript, Inc., a DME company selling orthopedic supplies throughout the Southeast.   Orthoscript obtained payment for the DME products which it supplied to patients, by filing claims with the patients' health care insurance companies (i.e., in this case, with Medicare and the Federal Employee Health Benefits Program).   Orthoscript also billed Medicare patients for any co-payment for which they were responsible.

Isley managed Orthoscript's billing operations.   He also allegedly instructed Orthoscript employees as to which product codes to use on payment claims submitted to Medicare and the FEHBP.    Isley had twelve years of previous experience in the DME business; and Nelson had  specific previous experience as a regional sales manager for orthopedic supplies. Orthoscript enrolled with Medicare, as a DME supplier, in October 1998.   [Indictment, Doc. 1].   Therefore, the Government contends that they knew which DMEs were covered under the Government program, and the true costs to the Government for covered DMEs.

Medicare and FEHBP utilize the same Healthcare Common Procedure Coding System (HCPCS), and each assigns the same code to each piece of covered DME, whether or not such DME is covered by insurance. The DME product code determines both the amount of payment to the DME supplier (here, Orthoscript), and the amount, if any, of any co-payment due from the patient. In the Southeast area, DME suppliers submit Medicare payment claims to the Palmetto Government Benefits Administrators ("Palmetto") in Columbia, South Carolina. DME suppliers submit their FEHBP payment claims to the Blue Cross Blue Shield Service Benefit Plan ("BCBS-Federal").

Palmetto publishes a Supplier Manual, containing payment and coverage rules for DME supplies; and employs nurse educators to answer questions about how DME providers can prepare accurate claims for payment. The Statistical Analysis DME Regional Carrier (SADMERC), which is another Medicare contractor, operates a coding help line and a website, offering assistance on how to correctly code covered products for payment claims. Palmetto advertises the SADMERC coding help line and website in its correspondence to DME suppliers.

The Government contends that the defendants executed a scheme to defraud Medicare and FEHBP, between January 1, 1999 and November 30, 2003, by directing their Orthoscript employees, over the employees' objection, to assign incorrect

7

product codes on shoulder braces, wrist braces and tibial fracture braces, in order to generate greater payments from Medicare and FEHBP than was authorized. As a result of such alleged health care fraud scheme, the Government contends that Medicare and the FEHBP paid more than $500,000 to the defendants' company (Orthoscript), in excess of what these agencies should have paid Orthoscript if it had correctly coded the DME products in its payment claims.[4] And, as a result, Medicare patients also were required to pay higher co-payments than Medicare required.

Specifically, counts One through Thirty-One of the instant Indictment charge that the defendants:

¶¶9.d. - 9.g. Used the product code for shoulder braces (L3670), when submitting

claims for arm slings, which the defendants knew do not require a

prescription and are not, therefore, covered by Medicare; and then

_____

[4]The defendants contend that the Indictment does not allege that Orthoscript failed to provide patients with the DME products for which the company submitted payment claims to Medicare and FEHBP. Rather, the defendants contend, the Indictment only alleges that they did not use "the *most* appropriate" product code from among a multitude of pertinent codes that they could have used. [Doc. 33, p. 18-19].

This Court is compelled to conclude that the defendants have misread the Indictment; and that the Government is, in fact, prosecuting them for knowingly and willfully executing a scheme to file insurance claims, and receive payment, for DME products that were not the equivalent of the products which the defendants actually supplied to their patients. (i.e., the beneficiaries did not receive the DME products for which the defendants submitted payment claims to Medicare and FEHBP).

charged Medicare patients a higher co-pay (generally $9.00) than allowed by Medicare for shoulder braces;

¶¶9.h. - 9.l.   Used the product codes for "custom fabricated" wrist braces (L3800 and L3907), when submitting claims for "prefabricated"/off the shelf wrist braces; and charged Medicare patients a higher co-pay (generally $20 - $25), than Medicare required;

¶¶9.— 9.q.   Used the product code for rigid tibial fracture foot braces (L2116), which are made to fit *into* the patient's *own* shoe, when it supplied patients with pneumatic walking boots which they wear *in place of* their own shoes; and charged Medicare patients a higher co-payment (typically $90.00) than Medicare required; and

¶¶9.r.-9.v.   Used the product code for *semi*-rigid tibial fracture foot braces which fit *into* a patient's shoe (L2114), when patients were provided with non-pneumatic walking boots that were worn *in place of the* patients' shoe; and charged Medicare patients a co-payment (typically $80.00) which was, in fact, greater than the cost of the DME product the patients received; and

¶13   Instructed Orthoscript employees to use the product code for a "*molded to patient*" ankle-foot orthosis (L1960), when they actually supplied

9

patients with *prefabricated* walking boots; and charged Medicare beneficiaries a higher co-payment (typically $80.00) than Medicare authorized.

Counts Thirty-two through Thirty-Seven of the Indictment charge the defendants with executing a scheme to defraud the FEHBP by:

¶15-17)    Using inappropriate product codes (i.e., making materially false and fraudulent representations)  in an attempt to obtain money from the FEHBP insurance carrier by using the wrong product codes for shoulder braces, custom fabricated wrist braces; custom fabricated wrist brace with thumb spica; and rigid ankle foot braces.

In their defense, Isley and Nelson contend that HCPCS DME coding system, as used and applied by Medicare and FEHBP (and their contractors, Palmetto and Blue Cross-Federal), has been changed numerous times during the years at issue, and is vague and open to differing interpretations.  The defendants apparently contend, in particular, that the product codes at issue are subject to different interpretations as to when a DME product is custom made, or when it is prefabricated and custom fitted to the patient.

The defendants further contend that, since they provided Medicare and FEHBP with any and all supporting medical records and DME documents that

Palmetto and BCBS-Federal requested, they did not knowingly use a wrong code. Rather, after attempting to comply with Medicare and FEHBP's product coding and document requirements, the defendants relied on the agencies' approval of their payment claims in the past when they decided which product codes it should use for subsequent payment claims. Therefore, the Government should be estopped from prosecuting the defendants for payment claims which Medicare and FEHBP had previously approved and paid.

The Government contends, however, that the defendants knowingly used product codes that did not accurately identify the DME products which they supplied to patients. Indeed, the Indictment identifies each alleged act of fraud by the date of Orthoscript's payment claim; the patient's initials and age; the allegedly false code that the defendants used on the payment claim; the allegedly correct code that the defendants' company should have used; and the amount of excess payment that the defendants' company received from the agencies (a documented total of $5,458.11 in excess payments). Doc. 1, ¶10 and ¶14. The Government is also seeking restitution of at least $500,000, and asset forfeiture of the defendants residential property (i.e., substitute assets), because it believes the specific acts of fraud identified in the Indictment are representative of a much larger scheme to commit health care insurance fraud and with commensurate losses to the agencies.

Part Four                           Conclusions of Law

    A.    <u>The Indictment is not unconstitutionally vague as applied to the</u>
<u>defendants</u>.

A court may not dismiss an indictment based on facts that should be
developed at trial.  See <u>United States v. Torkington</u>, 812 F.2d 1347 (11th Cir. 1987),
citing <u>United States v. Cadillac Overall Supply Co.</u>, 568 F.2d 1078, 1082 (5th Cir.
1978) (On a motion to dismiss the indictment, the district court must not pierce the
pleadings or make a premature resolution of the merits of the allegations), <u>cert.</u>
<u>denied</u>, 437 U.S. 903, 98 S.Ct. 3088, 57 L.Ed.2d 1133 (1978).  If the factual allegations
in the indictment, when viewed in the light most favorable to the Government, are
sufficient to charge the offense as a matter of law, the district court should not
dismiss the indictment.  <u>See</u> <u>Torkington</u>, <u>supra</u> at 1354, citing <u>United States v. Mann</u>,
517 F.2d 259, 266 (5th Cir. 1975), <u>cert. denied</u>, 423 U.S. 1087, 96 S.Ct. 878, 47 L.Ed.2d
97 (1976).  Indeed, on a motion to dismiss an indictment, the district court must
consider the allegations in the indictment as true.  <u>See</u> <u>Cadillac Overall Supply</u>,
<u>supra</u> at 1082.

Under Fed. R. Crim.P. 12(b),  an indictment may be dismissed because of a
legal infirmity in the prosecution.  <u>Torkington</u>, <u>supra</u>.  An indictment which fails to
include all of the material elements of the offense charged is fatally defective.

United States v. Bobo, 344 F.3d 1076 (11th Cir. 2003).[5]  United States v. Italiano, 837 F.2d 1480, 1482 (11th Cir. 1988).

A criminal indictment is constitutionally sufficient if it: (1) tracks the language of the statute that the defendant is charged with having violated, thereby setting forth the elements of the offense, and (2) fairly informs the defendant(s) of the facts and circumstances of the specific offense(s) with which they charged, thus enabling the defendant(s) to enter a plea which will bar future prosecution for the same criminal conduct (i.e., a plea which safeguards the accused from double jeopardy). United States v. Sharpe, 438 F.3d 1257 (11th Cir. 2006); United States v. Critzer, 951 F.2d 306, 307-08 (11th Cir. 1992);  United States v. Poirier, 321 F.3d 1024 (11th Cir. 2003), citing  Belt v. United States, 868 F.2d 1208, 1211 (11th Cir. 1989) (quoting Hamling v. United States, 418 U.S. 87, 117, 94 S.Ct. 2887, 2907, 41 L.Ed.2d 590 (1974).

To determine whether a particular charge in an Indictment provides sufficient notice of the offense charged (i.e., the material elements) and the facts surrounding that charge, the court must consider the challenged count as a whole, and must refrain from reading it in a hyper-technical manner.  United States v. Carroll, 320

---

[5]See also United States v. Bobo, 419 F.3d 1264 (11th Cir. 2005)(Insufficient indictment was basis for Court of Appeals panel decision vacating defendant's convictions for conspiracy and attempted health care fraud.  However, this was not a jeopardy-terminating event.  Defendant had no valid double jeopardy claim that barred the government from trying the same counts under a new indictment, where the Court had not taken the additional step of holding that evidence was also insufficient to sustain a conviction.)

F.Supp.2d 748, 760 (S.D. Ill. 2004) (quoting <u>United States v. Gironda</u>, 758 F.2d 1201,

1209 (7th Cir. 1985).

I.    <u>The Indictment sets forth the material elements of 18 U.S.C. §1347, and gives
      sufficient notice of the facts and circumstances of the charges against the
      defendants</u>.

       The Indictment charges the defendants with violating the general prohibition

against healthcare fraud contained in 18 U.S.C. §1347 which provides:

> Whoever knowingly and willfully executes, or attempts to
> execute, a scheme or artifice--
>
> (1)    to defraud any health care benefit program; or
>
> (2)    to obtain, by means of false or fraudulent pretenses,
>        representations, or promises,
>
> (3)    any of the money or property owned by, or under the
>        custody or control of, any health care benefit program,
>
> (4)    in connection with the delivery of or payment for health
>        care benefits, items, or services,
>
> shall be fined under this title or imprisoned not more than 10
> years, or both.

       This Court is compelled to conclude that the instant Indictment contains all

of the elements required to prove a violation of 18 U.S.C. §1347.  The Indictment

further alleges that the defendants executed a scheme to defraud the health care

benefits programs by assigning incorrect DME product codes that would net a

higher payment than warranted for the DME products which the defendants

14

actually supplied to Orthoscript's patients.   As noted previously, each alleged act of fraud is identified by the date of Orthoscipt's payment claim; the patient's initials and age; the allegedly false code that the defendants used on the payment claim; the allegedly correct code that should have been used; and the amount in excess of the payment that the defendants (i.e., Orthoscript) received.

The defendants contend that the Indictment should nonetheless be dismissed because the Government's prosecution of the defendants for violations of 18 U.S.C. §1437 is based on DME product codes and definitions contained in publications which are merely interpretive rules, and do not have the force and effect of law. [Doc. 33-1, p. 19].   The defendants further contend, that 18 U.S.C. §1347 is unconstitutionally vague as applied to the facts of this case,[6] because the health care codes which they allegedly intentionally violated are obscure, debatable and unclear; and the Government is, thus, trying to hold the defendants criminally responsible for violating an unclear legal duty.   In short, the defendants contend that they cannot be prosecuted for "knowingly and willfully" submitting false or

---

[6]"The question of whether the law was ambiguous is [a question of law to be decided by] the court, not the jury."   United States v. Mitchell, 165 Fed.Appx. 821 (11th Cir., Feb. 3, 2006).  Courts have already recognized that 18 U.S.C. §1437 is not unconstitutionally vague on its face.  See United States v. Kirkham, 129 Fed. Appx. 61 (5th Cir., April 1, 2006)(. See also United States v. Lucien, 347 F.3d 45 (2nd Cir. 2003) (18 U.S.C. 1347 applies to individuals who pose as injured passengers in staged automobile collisions for purpose of exploiting state no-fault automobile insurance statute.)

fraudulent claims, when the DME product codes and definitions which allegedly rendered the defendants' payment claims false or fraudulent are ambiguous and the subject of disputed interpretations.

The due process clause requires that a penal statute define a criminal offense with "sufficient definiteness that an ordinary person can understand what conduct is prohibited, and in a manner that does not encourage arbitrary and discriminatory enforcement. Kolender v. Lawson, 461 U.S. 352, 103 S.Ct. 1855, 75 L.Ed.2d. 903 (1983); United States v. Harriss, 347 U.S. 612, 617, 74 S.Ct. 808, 811, 98 L.Ed. 989 (1954). At least two Courts have noted that the language chosen by Congress in enacting 18 U.S.C. §1347 is "consistent with an intent to combat health care fraud without limitation." United States v. Baldwin, 277 F.Supp.2d 67, 69 (D.D.C. 2003); United States v. Lucien, 347 F.3d 45, 51 (2d Cir. 2003) (Congress intended this statute to include within its scope a wide range of conduct so that all forms of health care fraud would be proscribed, "regardless of the kind of specific schemes unscrupulous persons may concoct."). At least one Court has already held that the statute's language "execute or attempt to execute" a health care fraud scheme is not ambiguous. United States v. Kirkham, 129 Fed. Appx. 61 (5th Cir, April 11, 2005)

As the defendants noted, Congress has left DME codes and definitions as interpretive rules, rather than including them in statutory rules or regulations for

16

Medicare or other insurance programs, thereby avoiding the lengthy process of enacting revisions under the Administrative Procedures Act (APA) each time a medical test, device or treatment undergoes some change, refinement or addition. Nonetheless, courts are required to give substantial deference to an agency's interpretation of its own regulations, particularly when the regulatory program is highly technical and complex.  See In re Cardiac Devices Qui Tam Litigation, 221 F.R.D. 318, 353 (D. Conn. 2004)

The defendants' challenge that the statute is unconstitutionally vague is closely related to an objection that 18 U.S.C. §1347 does not require a showing of specific intent.  See United States v. Waymer, 55 F.3d 564, 568 (11th Cir. 1995).  When a statute includes "willfulness" or specific intent as an element, it will normally not be so vague as to deprive a defendant of notice that his conduct is proscribed. Kirkham, supra at 7, citing Screws v. United States, 325 U.S. 91, 102, 65 S.Ct. 1031, 89 L.Ed. 1495 (1945)("The requirement that the act must be willful or purposeful may not render certain, for all purposes, a statutory definition of the crime which is in some respects uncertain.  But it does relieve the statute of the objection that it punishes without warning an offense of which the accused was unaware.")

The defendants here, as in Kirkham, supra, do not contend that they did not understand what it means to execute a scheme to defraud.  Therefore, this Court is

17

compelled to conclude that the defendants' vagueness challenge to the constitutionality of 18 U.S.C. §1347, the health care fraud statute, is without merit.

As to the question of whether a person of ordinary intelligence operating a DME supply company would, upon review of 18 U.S.C. §1347, understand that the defendants' specific alleged conduct is prohibited (i.e., that their product coding for payment claims might fall outside the legal limits), is a question of fact to be determined at trial by the jury. United States v. Powell, 423 U.S. 87, 92, 96 S.Ct. 316, 46 L.Ed.2d 228 (1975). The defendants' first Motion to Dismiss Indictment [Isley Doc. 33; Nelson Doc. 76] describes at great length the various DME product codes and definitions cited in the Indictment, in an attempt to show why the Government has insufficient evidence to prove that the defendants used inaccurate product codes. However, except under extraordinary circumstances not present here, the Court may not look beyond the pleadings, nor may it dismiss an indictment based on a determination of facts that should be developed at trial. Indeed, if the factual allegations in the Indictment, when viewed in the light most favorable to the Government, are sufficient to charge the offense as a matter of law, then the district court should not dismiss the indictment. United States v. Torkington, 812 F.2d 1347, 1354 (11th Cir. 1987); United States v. Al-Arian, 308 F.Supp.2d 1322 (M.D.Fla. 2004). See also Carroll, supra) (Court cannot consider evidence relating to factual issues,

in determining the merit of the defendant's motion to dismiss); Fed.R.Crim.P. 12(b)(3)(B).

Accordingly, the defendant's vagueness challenge based on the interpretation and application of the DME product codes in question is premature.  United States v. Reed, 114 F.3d 1067, 1070 (10th Cir. 1997); United States v. Larm, 824 F.2d 780, 784 (9th Cir. 1987).  Furthermore, this Court is further compelled to conclude that the Indictment includes each of the material elements of a violation of 18 U.S.C. §1347, accompanied by a statement of the facts and circumstances surrounding such violation(s), sufficient to inform the defendants of the specific charges against them and to plead double jeopardy in any subsequent prosecution under such facts.

**IT IS THEREFORE RECOMMENDED** that the Defendants' first Motion to Dismiss the Indictment [Isley Doc. 33; Nelson 76] be **DENIED**.

II.     The Government is not estopped from prosecuting the defendants for knowingly and willfully using incorrect product codes in a scheme to execute a health care fraud scheme.

The defense of "entrapment by estoppel" is available when (1) a government official tells a defendant that a certain activity is legal; (2) the defendant commits the activity in reasonable reliance on that advice; and (3) prosecution for the conduct would be unfair.  United States v. Clark, 986 F.2d 65, 69 (4th Cir. 1993); United States v. Howell, 37 F.3d 1197, 1204-5 (7th Cir. 1994); U.S. v. Ramirez-Valencia, 202 F.3d

1106, 1109 (9th Cir. 2000); <u>U.S. v. Thompson</u>, 25 F.3d 1558, 1563 (11th Cir. 1994).  *See*

<u>Cox v. State of Louisiana</u>, 379 U.S. 559, 571, 85 S.Ct. 476, 484, 13 L.Ed.2d 487 (1965).

As noted by the Government, the defense provides "a narrow exception to the

general rule that ignorance of the law is no defense."  <u>United States v. Eaton</u>, 179

F.3d 1328, 1332 (11th Cir. 1999) (quoting <u>United States v. Funches</u>, 135 F.3d 1405, 1407

(11th Cir. 1998).

To support a defense of entrapment by estoppel, the defendants must do more

than show that a government agent or official unintentionally made an affirmative

misrepresentation, or made 'vague or contradictory statements,'" <u>U.S. v. Ramirez-

Valencia</u>, 202 F.3d at 1109; <u>United States v. Howell</u>, 37 F.3d at 1205.  The defendants

must also show that they reasonably relied on advice given by two federal health

care insurance programs, Medicare and FEHBP.  "Reasonable reliance," means that

the defendants sincerely desired to obey the law; <u>and</u> that it was objectively

reasonable for the defendants to believe that the government's statement (i.e., the

approval of their Medicare and FEHBP claims) was correct.  *Id*.  <u>United States v.

Eaton</u>, 179 F.3d 1328, 1332-33 (11th Cir. 1999); <u>United States v. Funettes</u>, 135 F.3d

1405, 1407 (11th Cir. 1998).  The defense of entrapment by estoppel does not focus

on the defendant's state of mind.  Rather, the defense of entrapment by estoppel

focuses on the conduct of the government official, and whether that conduct (i.e.,

statement; or, as in this case, approval of a payment claim based on a particular

DME product code) was sufficient to create an objectively reasonable expectation on

which the defendant could rely.  See United States v. Thompson, 25 F.3d 1558, 1569

(11th Cir. 1994).

The defendants contend that they relied on Palmetto and BCBS-Federal

approval of Medicare and FEHBP payment claims as approval that the product

codes the defendants were using were correct.  Therefore, the Government should

be estopped from prosecuting them for using product codes that Medicare and

FEHBP approved, based on the defendants' supporting medical records for each

payment claim.

The Government contends, however, that (1) government officials or agents

did not affirmatively mislead the defendants on a point of law; and (2) if the

defendants relied on Medicare and FEHBP approval of their payment claims, but

they had provided the health care plans with incorrect information, then their

reliance on approval of the payment claims was, as a matter of law, unreasonable.

In short, the health care plans paid the defendants' payment claims in error, based

on the defendants' submission of incorrect product codes and information submitted

by the defendants.  Therefore, the defendants could not reasonably rely upon the

health care plans' approval of their payment claims as approval to continue using

incorrect DME product codes.  The Government also contends that Isley knowingly and willfully instructed Orthoscript employees by directing them to use incorrect product codes, over their objections.

This Court is compelled to conclude that, if the defendants intentionally submitted a claim for a DME product other than the product  they  actually provided to a patient, then they could not have reasonably relied on approval of their payment claims for that DME product.  Any such approval was made in error because the defendants intentionally misled the Government agencies. Therefore, the defendants would not be entitled to rely on such erroneous payments to justify their intentional misrepresentations of future payment claims.  Since an entrapment defense necessarily depends upon the particular facts of the prosecution, which are not known until trial, this Court is further compelled to conclude that the defendants' Motion to Dismiss Indictment Due to Entrapment by Estoppel is premature.

**IT IS THEREFORE RECOMMENDED** that the defendants' Motion to Dismiss the Indictment Due to Entrapment by Estoppel [Isley Doc.35; Nelson Doc. 78] be **DEFERRED** to the district judge for consideration.

III.    The Indictment is facially sufficient and will protect the defendant's Fifth and Sixth Amendment rights, and is not based on errors of material fact.

The defendants contend that the Indictment is facially insufficient: they have not been given sufficient notice of the charges pending against them, and the Grand Jury may not have understood the manner in which the Government contends the defendants committed a scheme to defraud the Medicare and FEHBP health-care insurance programs.  Specifically, the defendants contend that the Indictment omitted material information from both the defendants and the Grand Jury, by failing to: (1) identify what payment and coverage rules, or special coverage instructions, the defendants failed to follow; (2) set forth the definitions of the DME product codes that the defendants used, or specify why those codes should not have been used; (3) identify the DME products that the defendants provided to the beneficiaries listed in the Indictment; (4) state why some other product codes and definitions would have been more appropriate for the defendants to use; (5) mention that the carriers' application of the product codes and terms at issue was discretionary, (6) identify the criteria used by the carriers to determine that the defendants' used inappropriate product codes; and (7) mention that the DME product codes at issue were substantially revised during the relevant time period. In short, the defendants contend that because such material information was omitted from the Indictment, the Grand Jury was misled; and the defendants have not been

23

fairly informed of the charges against which they must defend, nor will they be able to plead an acquittal or conviction in order to bar future prosecution for the same offense(s).

Rule 7(c)(1) of the Federal Rules of Criminal Procedure requires that an Indictment contain a "plain, concise and definite written statement of the essential facts constituting the offense charged." This requirement is said to perform three constitutionally required functions: (1) it satisfies the Fifth Amendment[7] protection against prosecution for crimes based on evidence not presented to a Grand Jury; (2) it prevents a person from being subject to double jeopardy, as prohibited by the Fifth Amendment; and (3) it fulfills the defendant's Sixth Amendment right to be "informed of the nature and cause of the accusation(s)" made in the Indictment. United States v. Walsh, 194 F.3d 37, 44 (2nd Cir. 1999).

An indictment which is valid on its face is not subject to challenge on the ground that the Grand Jury acted on the basis of insufficient or incompetent evidence. United States v. Calandra, 414 U.S. 338, 345, 94 S.Ct. 613, 38 L.Ed.2d 561 (1974). A court may dismiss an indictment for error in grand jury proceedings, however, if the defendant can establish that she was prejudiced. To establish prejudice, the defendant must show that the prosecution committed errors that

---

[7]The Fifth Amendment states that "[n]o person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury."

substantially influenced the Grand Jury's decision to indict; or that the prosecution committed errors such that there is "grave doubt" that the Grand Jury's decision to indict was free from the substantial influence of such errors.  <u>Bank of Nova Scotia v. United States</u> 487 U.S. 250, 256, 108 S.Ct. 2369, 101 L.Ed.2d 228 (1988).

The defendants contend that it is unclear if the Grand Jury understood (a) the specific types of DME products at issue, (b) what made the defendants' use of particular codes for those products improper; or (c) that the insurance carriers' application of DME product codes is discretionary and based on criteria which the Government has not mandated, and DME product codes and definitions do not have the force and effect of law.  As a result, the defendants contend, they were prejudiced; and they cannot be assured that they will be tried on evidence that was actually  presented to the Grand Jury.

This Court is compelled to conclude that the Grand Jury was asked to address whether the defendants knowingly and willfully executed a scheme to defraud the Medicare and FEHBP health care insurance programs.  As previously stated herein, the Indictment sets forth the essential elements of a charge of health care fraud in violation of 18 U.S.C. §1347.  The indictment also identifies each alleged act of fraud by the date of Orthoscript's payment claim; the patient's initials and age; the allegedly false code that the defendants used on the payment claim; the allegedly

correct code that should have been use; and the amount of excess payment that the defendants' company received (a total of $5,458.11 in excess payments). Doc. 1, ¶10 and ¶14.  In short, as previously stated, this Court is compelled to conclude that the Indictment contains those facts and elements of the alleged offense necessary to sufficiently inform the defendants of the charges against them and is facially sufficient.

If there were errors or omissions in the Government's evidence to the Grand Jury, this Court is compelled to conclude such errors or omissions were harmless error. Fed.R.Crim.P. 52(a).  Furthermore, the defendants have failed to demonstrate that they were prejudiced thereby.

The defendants have a constitutional right to know the offense with which they have been charged, not the details of how the Government will prove it. United States v. Kendall, 665 F.2d 126, 135 (7th Cir. 1981).   Contrary to the defendants' contention, this Court is compelled to conclude that the defendants are not charged with violating HCPCS DME product code rules, policies or regulations. Rather, they are charged with knowingly and willfully executing a scheme to defraud two government health care insurance programs, in violation of 18 U.S.C. §1347.  Whether they, in fact, executed, or attempted to execute a scheme of health

26

care fraud remains an issue for the trier of fact, and one which the Government must prove beyond a reasonable doubt.

For the above and foregoing reasons, this Court is compelled to conclude that the Government has not violated the defendants' Sixth Amendment right to be "informed of the nature and cause of the accusation(s)" against them.  Furthermore, the defendant's contention that the Indictment should be dismissed for Grand Jury Errors, or because they are not adequately protected against double jeopardy, in violation of their Fifth Amendment rights, is also without merit.

**IT IS THEREFORE RECOMMENDED** that the defendants' Motion to Dismiss the Indictment Due to alleged Fifth and Sixth Amendment Violations and Grand Jury Errors [Isley Doc. 36; Nelson Doc. 79] be **DENIED**.  If the Court finds that the facts proven at trial materially deviate from the language of the Indictment, then the Court can consider a Motion for Judgment of Acquittal at that time.

IV.   The Indictment does not contain surplusage, (i.e., legally irrelevant, immaterial or prejudicial language).

This Court has discretion to strike surplusage from the Indictment, if the Court finds the challenged language is immaterial, irrelevant, or prejudicial. The standard for doing so is an exacting one: language can be stricken only if it is clear that it is not legally relevant.  Fed.R.Crim.P.7(d);  Carroll, supra at 760, 761.

27

The defendants contend that the Indictment contains prejudicial language (i.e., surplusage) in that, inter alia, it (1) bootstraps allegations that the defendants charged higher co-payments than allowed, to the Government's allegations that the defendants presented payment claims to the two agencies for products that were more expensive than those they actually supplied to Orthoscript's patients; (2) suggests that Orthoscript, the defendants' business, could not bill patients for more than the amount of money that it paid (i.e., the cost) for DME products; (3) invites jurors to view the Indictment as only the tip of the criminal "iceberg" by stating that there were "multiple [uncharged and unspecified] executions" of the alleged scheme to defraud set forth in the Indictment; (4) inserts an alleged loss figure of $500,000 when the Government has only charged the defendants with specific counts allegedly leading to $5,458.11 in excess payments. [Isley Doc. 38; Nelson Doc. 80]

The Government contends that even if some of the language in the Indictment appears to be prejudicial, it cannot be considered surplusage, because it is information which is relevant to the charge(s) against the defendants and is, therefore, information which the government hopes to properly prove at trial. United States v. Scarpa, 913 F.2d 993, 1013 (2d Cir. 1990); accord United States v. Hill, 799 F. Supp. 86 (D. Kan. 1992)

This Court is compelled to conclude that based on the Government's representation that it intends to introduce evidence at trial in support of all of its allegations in the Indictment, and considering the "exacting standard" that the

defendants must meet to warrant the granting of their Motion to Strike Surplusage, this Court is compelled to conclude that the Motion to Strike Surplusage must be **DEFERRED** to the District Judge for consideration after the Government presents its evidence at trial.

<u>Conclusion</u>

For the above and foregoing reasons,

**IT IS THEREFORE RECOMMENDED** that the defendants' first Motion to Dismiss the Indictment [Isley Doc. 33; Nelson Doc. 76] be **DENIED**;

**IT IS FURTHER RECOMMENDED** that the defendants' Motion to Dismiss the Indictment Due to Entrapment by Estoppel [Isley Doc. 35; Nelson Doc. 78] be **DEFERRED** to the District Judge;

**IT IS FURTHER RECOMMENDED** that the defendants' Motion to Dismiss the Indictment Due to Fifth and Sixth Amendment Violations and Grand Jury Errors [Isley Doc. 36; Nelson Doc. 79] be **DENIED**.

**IT IS FURTHER RECOMMENDED** that the defendants Motion to Strike Surplusage [Isley Doc. 38; Nelson Doc. 80] be **DEFERRED** to the District Judge**.**

**IT IS ALSO HEREBY ORDERED** that the Clerk correct the docket sheet for defendant Nelson to reflect that his **(1)** Motion for Production of Favorable Evidence [**Nelson Doc. 77**] (adopting Isley's [Doc. 34] Motion for Production of Favorable Evidence); and Nelson's **(2)** Motion for Jury Determination of Forfeiture Nexus [**Nelson Doc. 81**] (adopting Isley's [Doc. 39] Motion for Jury Determination of

Forfeiture Nexus are **GRANTED**, in accordance with this Court's February 14, 2006

Oral Order granting Isley's Motion for Production of Favorable Evidence and

Motion for Jury Determination of Forfeiture Nexus [Isley Docs. 34 and 39].

### ORDER AND CERTIFICATE

All other motions having been disposed of,

**IT IS HEREBY ORDERED** that this case be, and is hereby Certified Ready for

Trial.

Let a copy of this Order be served by mail upon counsel for the parties.

**IT IS SO RECOMMENDED, ORDERED AND CERTIFIED** this 20th day of

OCTOBER 2006.


S/ JOEL M. FELDMAN
JOEL M. FELDMAN
UNITED STATES MAGISTRATE JUDGE