IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

UNITED STATES OF AMERICA

v.

ANGELA DEE ISLEY,

Defendant.

CRIMINAL CASE NO.

1:05-CR-0621-CAP-JFK

(First Superseding)

## ORDER AND REPORT AND RECOMMENDATION

Pending before the court is Defendant Angela Dee Isley's motions [Doc. 155 and 158] to dismiss Counts Fifteen through Fifty-Three of the Indictment and motion [Doc. 156] for a Bill of Particulars.  Defendant is named in a superseding indictment, returned on February 20, 2007, with a scheme to defraud Medicare, Counts One through Fourteen, in violation of 18 U.S.C. §§ 1347 and 2.  [Doc. 146].  Defendant is also named in Counts Fifteen through Fifty, with a mail fraud scheme, in which it is alleged that Defendant deprived Orthoscript of monies and property and of her "good, faithful, and honest services," in violation of 18 U.S.C. §§ 1341, 1346, and 2.  [Id.].  Finally, Defendant is charged with money laundering in Counts Fifty-One through Fifty-Three, in violation of 18 U.S.C. §§ 1957 and 2.  [Id.].  The Government has

responded opposing the motions to dismiss and for a bill of particulars.  [Docs. 159, 160, 164].

**1.      Motion to Dismiss Counts Fifteen Through Fifty-Three**

Defendant Isley moves to dismiss Counts Fifteen Through Fifty-Three of the First Superseding Indictment asserting various grounds in support of her motions.  As to Counts Fifteen through Fifty, charging a mail fraud scheme to defraud Orthoscript, Inc., of money and property as well as her good, faithful and honest services, in violation of 18 U.S.C. §§ 2, 1341 and 1346, Defendant contends that: (1) the Indictment does not allege an offense pursuant to 18 U.S.C. § 1346 because she is only charged with depriving her employer of her loyalty which is insufficient for private sector honest services claims; (2) the Indictment does not allege an offense pursuant to 18 U.S.C. § 1341 because the mailings alleged are not in furtherance of the mail fraud scheme set forth in the Indictment; and (3) the statute of limitations bars the charges because the First Superseding Indictment was returned five years after the offenses alleged in the mail fraud counts.  [Doc. 155 at 5-10, 16-17].  As to Counts Fifty-One through Fifty-Three, charging Defendant with laundering the proceeds, in excess of $10,000, of the health care fraud scheme, in violation of 18 U.S.C. §§ 2 and 1957, Defendant contends that: (1) the Indictment does not allege an offense because

the specific health care fraud counts set forth in the Indictment do not establish proceeds in excess of $10,000; (2) the statute of limitations bars the charges because the First Superseding Indictment was returned five years after the offenses alleged in underlying criminal offense (the health care fraud counts); and (3) the money laundering counts are multiplicitous of three mail fraud counts.  [Doc. 155 at 10-16; Doc. 158].  The Government opposes the motions to dismiss contending that the First Superseding Indictment sufficiently states offenses for violations of 18 U.S.C. §§ 1341, 1346, and 1957; that the statute of limitations does not bar the offenses alleged in the Indictment; and that the money laundering and mail fraud counts are not multiplicitous.  [Docs. 160, 164].

### a.    First Superseding Indictment

The First Superseding Indictment, returned on February 20, 2007, charges Defendant with violations of 18 U.S.C. §§ 2 and 1347 (a scheme to defraud the Medicare Program) in Counts One through Fourteen,[1] with violations of 18 U.S.C. §§ 2, 1341, and 1346 (a mail fraud scheme) in Counts Fifteen through Fifty, and with violations of 18 U.S.C. §§ 2 and 1957 (money laundering) in Counts Fifty-One

---

[1]These charges were alleged in the original Indictment returned on December 29, 2005.  [Doc. 1].

3

AO 72A
(Rev.8/82)

through Fifty-Three. [Doc. 146]. Specifically, Counts One through Ten allege that from January 2001 through December 2003, Defendant knowingly and willfully executed and attempted to execute a scheme and artifice to defraud the Medicare Program and to obtain money from the program by means of materially false and fraudulent pretenses, representations, and promises in connection with the delivery of and payment for health care benefits. The scheme involved using incorrect billing codes for durable medical equipment ("DME"), wrist braces, supplied by Orthoscript, Inc., to Medicare patients, through their health care providers. Defendant, the Chief Operating Officer, part owner, member of the Board of Directors and employee of Orthoscript, allegedly used her position to further the fraud scheme by causing the incorrect billing codes to be submitted to Medicare resulting in the receipt of substantial overpayments by Orthoscript. [Doc. 146, Counts One-Ten, ¶¶ 1-7]. The Indictment alleges, "As a result of multiple executions of the health care fraud scheme . . ., Defendant ANGELA DEE ISLEY caused Orthoscript to fraudulently bill the Medicare Program no less than $600,000 to Orthoscript between January 2001 and December 2003." [Doc. 146, Counts One-Ten, ¶ 8]. The Indictment then identifies ten specific instances of executing the health care fraud scheme by making materially

4

false and fraudulent representations to Medicare in connection with the delivery of and payment for health care benefits.  [Doc. 146, Counts One-Ten, ¶ 9].

Counts Eleven through Fourteen allege basically the same health care fraud scheme but involving walking boots as the DME for which allegedly incorrect billing codes were submitted to Medicare, for the period September 2001 through June 2003 and resulting in fraudulent billings of "no less than $32,000."  [Doc. 146, Counts Eleven-Fourteen, ¶¶ 10-12].  The Indictment then identifies four specific instances of executing the health care fraud scheme by making materially false and fraudulent representations to Medicare in connection with delivery of and payment for health care benefits.  [Doc. 146, Counts Eleven-Fourteen, ¶ 13].

Counts Fifteen through Fifty allege that from April 2001 and continuing through August 2004, Defendant Isley knowingly and wilfully devised a scheme and artifice to defraud Orthoscript, to obtain money and property from Orthoscript and to deprive Orthoscript of the "good, faithful, and honest services" of Defendant in her capacity as an officer and employee, by means of materially false and fraudulent pretenses, representations and promises.  Specifically, the Indictment alleged that Orthoscript was owned by shareholders and operated by its Board of Directors and officers.  Defendant was alleged to be a shareholder, officer, and member of the Board.  She received

5

proceeds of the company's profits as well as a salary.  Defendant was also an employee having executed an employment agreement in which she promised to provide services "to the best of her ability for and on behalf of the Corporation" and to "comply with all laws, statutes, ordinances, rules and regulations."    Among Defendant's responsibilities were "handling and accounting for ordinary business expenses, such as writing checks to vendors."  [Doc. 146, Counts Fifteen-Fifty, ¶¶ 14-20].

The Indictment alleged that Defendant "routinely caused Orthoscript employees to mail ordinary business correspondence such as checks and invoices" and that she "was responsible for processing and mailing the payments relating to her and her significant other's . . . personal credit card accounts."  In so doing, Defendant "used her control over Orthoscript's finances and accounting and financial records to misappropriate substantial amounts of Orthoscript's funds" by causing "Orthoscript to pay certain of the Defendant's personal Capitol One credit card bills, as well as certain other personal Capitol One credit card bills in the name of Defendant ISLEY's significant other. . . ."  The mail fraud scheme is further described as Defendant using "her sole control over Orthoscript's books to cause these payments to be falsely recorded as legitimate business expenses. . . .   Orthoscript's other officers and shareholders did not authorize Defendant ISLEY to obtain reimbursement for these

personal expenses, and did not know that she had done so." As a result of her conduct, the Indictment alleges that Defendant "fraudulently caused Orthoscript to pay more than $360,000 to Capitol One for Defendant ISLEY's and [her significant other's] personal credit card bills during the period of the scheme." [Doc. 146, Counts Fifteen-Fifty, ¶¶ 21-24]. The Indictment then sets forth the specific counts alleging mailings using the United States Postal Service or private and commercial interstate carriers, in furtherance of and for the purpose of executing the mail fraud scheme, which were "checks drawn on the Orthoscript bank account, to Capitol One, to satisfy credit card debt in Defendant ISLEY's name and in the name of her significant other. . . ." [Doc. 146, Counts Fifteen-Fifty, ¶ 25].

Finally, the Indictment alleges, in Counts Fifty-One through Fifty-Three, that Defendant knowingly engaged in "monetary transactions in criminally derived property of a value greater than $10,000, consisting of the withdrawal, transfer and exchange, in and affecting commerce, of funds and monetary instruments by, through and to a financial institution, such property having been derived from specified unlawful activity, to wit, a health care fraud scheme as more particularly described in Paragraphs One through Nine of this Indictment (including all subparagraphs). . . ." [Doc. 146, Counts Fifty-One-Fifty-Three, ¶ 26]. The Indictment then identifies three

7

transactions by check number, date (May, 5, June 17, and September 2 of 2003), the amount in excess of $10,000, and payee as the counts of money laundering in violation of §§ 2 and 1957.  [Id.].[2]

**b.    Sufficiency of the Mail Fraud and Money Laundering Counts**

As noted, Defendant contends that, for various reasons, Counts Fifteen through Fifty of the First Superseding Indictment should be dismissed for failing to allege violations of the cited criminal statutes.  [Doc. 146].  The Eleventh Circuit Court of Appeals recently reiterated the law regarding attacks on the sufficiency of an indictment:  "By now it has become well-established that '[t]he sufficiency of a criminal indictment is determined from its face.'. . .  'For an indictment to be valid, it must contain the elements of the offense intended to be charged, and sufficiently apprise the defendant of what he must be prepared to meet.' . . .  'An indictment not framed to apprise the defendant with reasonable certainty, of the nature of the accusation against him is defective, although it may follow the language of the statute.'"  United States v. Sharpe, 438 F.3d 1257, 1263 (11th Cir. 2006) (citations omitted).  In this regard "an indictment must be sufficiently specific to inform the

_____

[2]The First Superseding Indictment also contains a forfeiture allegation.  [Doc. 146, ¶¶ 27-28].

8

defendant of the charge against him and to enable him to plead double jeopardy in any future prosecution for the same offense.  An indictment satisfies these requirements as long as the language therein sets forth the essential elements of the crime." United States v. Cole, 755 F.2d 748, 759 (11th Cir. 1985); see also United States v. Plummer, 221 F.3d 1298, 1302 (11th Cir. 2000) ("In reviewing a motion to dismiss an indictment we look only at whether the Government has alleged each of the elements of the statute."); United States v. Dabbs, 134 F.3d 1071, 1079 (11th Cir. 1998) ("We deem an indictment sufficient if it (1) presents the essential elements of the charged offense, (2) notifies the accused of the charges to be defended against, and (3) enables the accused to rely upon a judgment under the indictment as a bar against double jeopardy for any subsequent prosecution for the same offense.").

In resolving Defendant's pretrial motion to dismiss, the court is not determining whether the Government's evidence is sufficient to find Defendant guilty of the charges in the Indictment or whether the Government will carry its burden of proof at trial but only whether there is a legal infirmity or defect in the Indictment. Sharpe, 438 F.3d at 1263 ("In ruling on a motion to dismiss for failure to state an offense, a district court is limited to reviewing the *face* of the indictment and, more specifically, the *language used* to charge the crimes. . . .  It is well-settled that 'a court may not dismiss

9

an indictment . . . on a determination of facts that should have been developed at trial.'") (citations omitted) (emphasis in original).  As stated by the district court in United States v. Ferguson, 142 F. Supp. 2d 1350, 1353-54 (S.D. Fla. 2000):

> In criminal proceedings, there is no summary judgment mechanism. . . . "Nor do the rules provide for a pre-trial determination of sufficiency of the evidence.". . .  This, of course, is because the resolution of factual questions is the sole province of the jury. . . . [T]he Court's review at this stage of the proceeding is very limited.  The Court may dismiss the case based upon: (1) a legal infirmity or defect in the charging instrument; or (2) a purely legal question, such as a determination that the statute is unconstitutional.  Any issues that require consideration of the facts underlying this prosecution, however, are not the proper subject of a pretrial motion to dismiss.

Id. at 1353-54 (citations omitted); see also United States v. Salman, 378 F.3d 1266, 1268 (11th Cir. 2004) ("There is no summary judgment procedure in criminal cases. Nor do the rules provide for a pre-trial determination of the sufficiency of the evidence. . . .  The sufficiency of a criminal indictment is determined from its face. The indictment is sufficient if it charges in the language of the statute."); United States v. Ayarza-Garcia, 819 F.2d 1043, 1048 (11th Cir. 1987) ("It follows that a pretrial motion to dismiss the indictment cannot be based on a sufficiency of the evidence argument because such an argument raises factual questions embraced in the general

10

issue. . . . Rule 12 is not intended to authorize 'speaking motions' through which the truth of the allegations in the indictment are challenged.").

And, in making the determination whether counts in an indictment should be dismissed, the court may not consider factual allegations not contained within the four (4) corners of the indictment, see Plummer, 221 F.3d at 1302 n.3 (noting that the district court in ruling on the motion to dismiss the indictment for failure to state an offense improperly considered facts not alleged in the indictment when focus should have been on indictment itself); United States v. Critzer, 951 F.2d 307 (11th Cir. 1992) ("The sufficiency of a criminal indictment is determined from its face."), and the court must accept all factual allegations in the indictment as true, see Salman, 378 F.3d at 1267-68; United States v. Torkington, 812 F.2d 1347, 1354 (11th Cir. 1987) (when considering a motion to dismiss an indictment, the allegations in the indictment must be taken as true).

Applying these principles to Defendant's challenges to the offenses alleging violations of 18 U.S.C. §§ 1341, 1346 and 1957, for failing to state an offense, the court finds that the allegations in the First Superseding Indictment more than adequately state the elements of the offenses intended to be charged and sufficiently apprise Defendant Isley of what she must be prepared to meet at trial. In fact, the

11

thrust of the Defendant's challenge to the Indictment is not the legal sufficiency of the charges but the sufficiency of the evidence which Defendant infers will be introduced at trial - matters not properly the subject of a pretrial motion to dismiss.

Defendant first contends that Counts Fifteen through Fifty of the First Superseding Indictment do not properly charge mail fraud counts with the scheme or artifice being to deprive Orthoscript of the intangible right of Defendant Isley's honest services. [Doc. 146 at 5-8]. Defendant bases her argument on highly selective citation to the language in paragraphs fourteen through twenty-five of Counts Fifteen through Fifty, on a claim that depriving another of intangible rights in the private sector is hard to apply and does not apply to only denying an employer of an employee's loyalty, and on the assertion that the court should not permit application of § 1346 in this case because the allegedly criminal conduct would be applicable to all employees. [Id.]. Defendant's arguments are not persuasive.

"'To establish a violation of sections 1341 and 1346, the Government must prove that the defendants (1) intentionally participated in a scheme or artifice to defraud and (2) used the United States mails to carry out that scheme or artifice.'" United States v. Hasner, 340 F.3d 1261, 1269 (11th Cir. 2003) (citations omitted). Accordingly, an indictment alleging a mail fraud scheme must state these elements.

12

"In addition, the government must allege of what the victim has been defrauded, whether it be money, property or the right to honest services under 18 U.S.C. § 1346." United States v. McCarter, 2007 WL 708979, *4 (11th Cir. March 9, 2007) (citing United States v. deVegter, 198 F.3d 1324, 1328 n.4 (11th Cir. 1999)).  The First Superseding Indictment alleges that Defendant Isley (1) knowingly and wilfully devised a scheme and artifice to defraud Orthoscript, (2) to obtain money and property from Orthoscript and to deprive Orthoscript of the "good, faithful, and honest services" of Defendant in her capacity as an officer and employee, by means of materially false and fraudulent pretenses, representations and promises and that (3) the scheme and artifice was executed by causing to be delivered by the United States Postal Service or by private and commercial interstate carriers "checks drawn on the Orthoscript bank account, to Capitol One, to satisfy credit card debt in Defendant ISLEY's name and in the name of her significant other. . . ."  [Doc. 146, Counts Fifteen-Fifty, ¶¶ 14, 25]. The elements of the offense of § 1346 are adequately pled placing Defendant on notice of the charges she faces.

However, the allegations in the Indictment do not stop with the recitation of the elements of the offense but set forth how the scheme and artifice to defraud was conducted by Defendant resulting in economic loss to Orthoscript as well as loss of her

13

honest services to Orthoscript.  In so doing, the Indictment alleges facts which places

Defendant's conduct within that authorized for mail fraud involving depriving an

employer of "honest services" in the private sector.  In deVegter, the Eleventh Circuit

Court of Appeals stated the standard for establishing criminal liability in this type of

mail fraud:  "'The prosecution must prove that the employee intended to breach a

fiduciary duty, and that the employee foresaw or reasonably should have foreseen that

his employer might suffer an economic harm as a result of the breach.'"[3]  198 F.3d at

1329 (citations omitted).  The indictment need not use exact language or words to

allege either a fiduciary duty or reasonably foreseeable economic harm.  "Linguistic

precision is not required in an indictment. . . ."  Id. at 1330.  The allegations in this

Indictment set forth, as noted, all of the elements of the offense and sufficiently

---

[3]After making this statement, the deVegter court subsequently noted that given the allegations in the indictment under consideration, which sufficiently alleged a fiduciary duty, it "need not decide the question . . . - whether a fiduciary duty is necessary in private sector § 1346 cases."  198 F.3d at 1330; see also United States v. Kalaycioglu, 2006 WL 3626874, *5 (11th Cir. December 11, 2006) (in rejecting the defendant's claim that jury instructions did not properly charge on § 1346, the court noted that in deVegter the circuit court did not decide whether a fiduciary duty is necessary and, then, declined to make such a finding on the facts presented in the case under consideration); United States v. Bradley, 428 F. Supp. 2d 1365, 1366 (S.D. Ga. 2006) (noting that prior Eleventh Circuit Court of Appeals panels expressly decided not to make a determination whether a fiduciary duty is required).  Likewise, in this case, given the allegations in the Indictment, which sufficiently allege breach of a fiduciary duty, this court need not reach this issue.

14

describe the facts underlying the offense to state a private sector honest services offense.

The Indictment asserts that Defendant used her position and duties, not only as an employee, but as part owner, shareholder, director and officer of Orthoscript, to misappropriate funds of Orthoscript, specifically stating that Defendant "used her control over Orthoscript's finances and accounting and financial records to misappropriate substantial amounts of Orthoscript's funds" by causing "Orthoscript to pay certain of the Defendant's personal Capitol One credit card bills, as well as certain other personal Capitol One credit card bills in the name of Defendant ISLEY's significant other. . . ." and that she "used her sole control over Orthoscript's books to cause these payments to be falsely recorded as legitimate business expenses. . . ." The Indictment further asserts that "Orthoscript's other officers and shareholders did not authorize Defendant ISLEY to obtain reimbursement for these personal expenses, and did not know that she had done so." [Doc. 146, Counts Fifteen-Fifty, ¶¶ 17-24]. And, Defendant executed an employment agreement, arguably setting out her fiduciary duty, in which she promised to provide services "to the best of her ability for and on behalf of the Corporation" and to "comply with all laws, statutes, ordinances, rules and regulations." [Doc. 146, Counts Fifteen-Fifty, ¶ 19]. Defendant's conduct is alleged

15

to have "fraudulently caused Orthoscript to pay more than $360,000 to Capitol One for Defendant ISLEY's and [her significant other's] personal credit card bills during the period of the scheme."   [Doc. 146, Counts Fifteen-Fifty, ¶ 24].   The allegations sufficiently allege that Defendant owed a fiduciary duty to Orthoscript due to her position as an officer, part owner, director and shareholder - not only as an employee, as Defendant wants to argue.   She exerted control and dominance over financial matters, and, having allowed her this authority and control, Orthoscript relied on her to honestly and faithfully execute her duties.   She allegedly did not.   See deVegter, 198 F.3d at 1331 n.8 ("'At the heart of the fiduciary relationship lies reliance, and de facto control and dominance.   The relation exists when confidence is reposed on one side and there is resulting superiority and influence on the other.'") (citation omitted)). And, the Indictment specifically alleges not only foreseeable economic harm to Orthoscript but actual and substantial economic harm due to payment of Defendant's and another party's personal expenses from the corporation's funds.   This is not an allegation of a mere breach of loyalty, in some vague manner, owed by a mere employee to her employer.

Defendant next contends that Counts Fifteen through Fifty, which as noted allege a violation of § 1341, should be dismissed because the mailings identified in the

16

Indictment are not in furtherance of the scheme and artifice to defraud.  [Doc. 155 at 8-10].  Defendant claims that the scheme had reached fruition before the mailings occurred.  This is so, according to Defendant, because she had possession of the Orthoscript checks to be used to pay personal credit card expenses before the checks were mailed to the credit card company.  [Id.].  Defendant's arguments are not persuasive, and again, Defendant seeks to challenge the sufficiency of the evidence not the sufficiency of the factual allegations in the Indictment.

"The mail fraud statute, 18 U.S.C. § 1341, prohibits the use of the mails in furtherance of a scheme to defraud."  United States v. Lee, 427 F.3d 881, 887 (11th Cir. 2005).  "While a mailing is a required element of a § 1341 claim, the use of the mails need not be an essential element of the scheme; for a mail fraud conviction, it is sufficient if the government shows that the mailing was 'incident to an essential part of the scheme' or 'a step in the plot.'"  Id. (quoting United States v. Waymer, 55 F.3d 564, 568-69 (11th Cir. 1995)).  However, if the underlying scheme has reached fruition, subsequent mailings will not violate the statute.  In this regard, "[a] scheme has 'reached fruition' when it is 'fully consummated.'"  United States v. Evans, 473 F.3d 1115, 1119 (11th Cir. 2006) (citation omitted).  This being said, mailings occurring

after receipt of money fraudulently obtained may still be for the purpose of executing the fraud, if the scheme continues.  Id.

The mail fraud counts specifically state that the identified mailings were in furtherance of the scheme and artifice to defraud, that is, by Defendant placing or causing to be placed in the United States Postal Service or with a private and commercial interstate carriers, in furtherance of and for the purpose of executing the mail fraud scheme, "checks drawn on the Orthoscript bank account, to Capitol One, to satisfy credit card debt in Defendant ISLEY's name and in the name of her significant other. . . ."  [Doc. 146, Counts Fifteen-Fifty, ¶ 25].  Defendant seeks to draw the line at the point of "checks drawn on Orthoscript bank account" to delineate when the scheme ended.  That unfortunately for Defendant is not how the fraud scheme is presented in the Indictment.  The purpose of the scheme was not for Defendant just to obtain Orthoscript funds, on one occasion, but to use Orthoscript funds to pay personal credit card debts over several years and to hide the misappropriation of funds by making it appear that legitimate business expenses were being paid by check. [Doc. 146, Counts Fifteen-Fifty, ¶¶ 24-25].  The mailings to the credit card company arguably were in furtherance of that scheme and necessary to continue the fraudulent activity without detection.

18

The decision as to whether the facts support that conclusion or the conclusion that Defendant proposes is not for this court to decide but for the jury: "*A fact-specific inquiry must be made to determine intent, that is to say, whether the mailing is part of the execution of the scheme as conceived by the perpetrator at the time.*" United States v. Mulhall, 428 F. Supp. 2d 82, 85 (D. Conn. 2006) (emphasis in original). Therefore, whether a scheme is furthered by the use of the mails "cannot be determined from the indictment as a matter of law," and pretrial arguments seeking to dismiss on this basis are premature. Id. Similarly, Defendant Isley's arguments in this case are premature, and her motion should be denied. See United States v. Maund, 2007 WL 1035132, *2 (S.D. Ga. April 2, 2007) (whether mailings were in furtherance of scheme to defraud "is ultimately question of fact to be determined by the jury"); United States v. Turner, 2005 WL 4001132, *7 (E.D. Ky. December 16, 2005) ("'Ultimately, whether a mailing furthers a scheme to defraud is a factual question for the jury to decide.'") (citation omitted); United States v. Selami, 2004 WL 1146116, *4 (N.D. Ill. May 18, 2004) (noting that the question of whether mailings were in furtherance of scheme must await trial, and indictment should not be dismissed as insufficient on its face "'unless there is no conceivable evidence that the Government could produce at

19

trial to substantiate its in furtherance allegation'") (citation omitted).   The First Superseding Indictment sufficiently alleges violations of the mail fraud statute.

Defendant also attacks as insufficient to state an offense the money laundering counts, Counts Fifty-One through Fifty-Three, alleging a violation of 18 U.S.C. §§ 2 and 1957.   She contends that the allegations in the Indictment fail to establish a connection between the monies obtained from the health care fraud scheme and the monetary transactions in Counts Fifty-One through Fifty-Three.  Defendant claims this is so because the monies obtained from the specific health care fraud counts alleged in execution of the scheme do not establish more than $10,000 in proceeds.  [Doc. 155 at 10-13].  The Government responds that Defendant's focus on the specific health care fraud counts, in lieu of the overall health care fraud scheme, as the specified unlawful activity from which the illegal proceeds flowed, misses the mark.  The Government argues that the overall scheme as alleged in the Indictment resulted in illegal proceeds in excess of $600,000, sufficient to support the money laundering charges.  [Doc. 160 at 16-20].  The Government's position is correct.

"To obtain a conviction on a § 1957 charge, the government bears the burden of proving beyond a reasonable doubt that [the defendant] 'knowingly engaged or attempted to engage in a monetary transaction in criminally derived property that is of

20

a value greater than \$10,000 and is derived from specified unlawful activity.'" <u>United States v. Johnson</u>, 440 F.3d 1286, 1289 (11th Cir. 2006) (citations omitted).  The First Superseding Indictment sets forth the elements of a § 1957 charge, alleging that Defendant knowingly engaged in "monetary transactions in criminally derived property of a value greater than \$10,000, consisting of the withdrawal, transfer and exchange, in and affecting commerce, of funds and monetary instruments by, through and to a financial institution, such property having been derived from specified unlawful activity, to wit, a health care fraud scheme as more particularly described in Paragraphs One through Nine of this Indictment (including all subparagraphs). . . ." [Doc. 146, Counts Fifty-One-Fifty-Three, ¶ 26].  The specified unlawful activity identified is the health care fraud scheme (not merely the individual counts in which the scheme was executed) alleged in paragraphs one through nine of the Indictment. <u>See</u> <u>United States v. Caldwell</u>, 302 F.3d 399, 412-13 (5th Cir. 2002) (rejecting the defendant's contention that the indictment did not sufficiently allege the "specified unlawful activity," the court found that general allegation that monies were derived from "mail fraud" in violation of § 1341 provides adequate notice).

The Indictment alleges:  "As a result of multiple executions of the health care fraud scheme . . ., Defendant ANGELA DEE ISLEY caused Orthoscript to

fraudulently bill the Medicare Program no less than $600,000 to Orthoscript between January 2001 and December 2003." [Doc. 146, Counts One-Ten, ¶ 8]. Defendant's focus on isolated, specific counts charged in execution of the scheme is misplaced. In United States v. Rogers, 321 F.3d 1226 (9th Cir. 2003), the Ninth Circuit Court of Appeals rejected the same argument being made by Defendant Isley. In that case, the defendant contended that because he was only convicted of one mail fraud count involving $5,000, he could not be convicted of a § 1957 money laundering violation. Id. at 1229. Noting that the Third, Fifth, and Tenth Circuit Courts of Appeal "have reached the same conclusion[,]" the court rejected this claim stating;

> It is apparent from the record, however, that Rogers was laundering the proceeds of the larger operation, which bilked hundreds of people out of hundreds of thousands of dollars. It is therefore clear to us that regardless of how much money Rogers personally, fraudulently solicited to form the basis of the mail fraud conviction, Rogers' conduct in laundering the money brought in by the entire Ponzi scheme is the relevant standard for determining if the elements of the money laundering statute have been met. They clearly were.

Id. Accord, United States v. Mankarious, 151 F.3d 694, 701-03 (7th Cir. 1998) (rejecting the defendant's attempt to link money laundering counts to specific counts in the indictment charging the "specified unlawful activity" because the Government only need prove "'that the money laundered be the fruit of an illegal act, there is no

22

requirement that the government link the money laundered to a specific criminal act'") (citation omitted).  In this case, the specified unlawful activity from which the laundered funds were derived is the ongoing health care fraud scheme which produced fraudulent billings in excess of $600,000, an amount clearly supporting three § 1957 charges.

For these reasons, the court finds that the First Superseding Indictment sufficiently alleges violations of 18 U.S.C. §§ 1341, 1343 and 1957.  Counts Fifteen through Fifty should not be dismissed.

### c.    Statute of Limitations

Defendant next asserts that both the § 1957 and the § 1341 counts in the First Superseding Indictment must be dismissed because they are barred by the applicable five year statute of limitations.  [Doc. 155 at 13-17].  The Government responds that all of the new charges in the First Superseding Indictment, which was returned on February 20, 2007, are alleged to have occurred within the five year statute of limitations, that is, after February 2002.  [Doc. 160 at 20-23].

"'The purpose of a statute of limitations is to limit exposure to criminal prosecution to a certain fixed period of time following the occurrence of those acts the legislature has decided to punish by criminal sanctions.'"  United States v. Clarke, 312

23

F.3d 1343, 1346 (11th Cir. 2002) (quoting <u>Toussie v. United States</u>, 397 U.S. 112, 114, 90 S. Ct. 858, 860, 25 L. Ed. 2d 156 (1970)).  "The statute of limitations in criminal cases begins to run when the crime is 'complete.'"  <u>Id.</u> (quoting <u>Toussie</u>, 397 U.S. at 115, 90 S. Ct. at 860).  Thus, the issue to be resolved in order to rule on the motion to dismiss is:  when were the crimes charged in this indictment "complete."

With respect to the money laundering counts, as noted previously, an offense under this statute occurs when an individual engages in a monetary transaction in criminally derived property, in an amount in excess of $10,000, which is derived from specified unlawful activity.  <u>Johnson</u>, 440 F.3d at 1289; <u>see also</u> <u>United States v. Nolan</u>, 223 F.3d 1311, 1315 (11th Cir. 2000) ("Money laundering occurs when one 'knowingly engages or attempts to engage in a monetary transaction in criminally derived property.'") (citation omitted).  Accordingly, the statute of limitations begins to run when the monetary transaction is complete.  <u>See, e.g.</u>, <u>United States v. Bucci</u>, 468 F. Supp. 2d 251, 255-56 (D. Mass. 2006) (the court rejected claim that statute of limitations barred § 1957 charge because a violation of § 1957 continues until the monetary transaction in which the defendant was allegedly engaged is complete which occurred within five years of return of the superseding indictment); <u>United States v. Blackwell</u>, 954 F. Supp. 944, 956 (D.N.J. 1997) (because a violation of § 1956 requires

24

proof that the defendant conducted a financial transaction, "a violation of Section § 1956(a)(1)(B)(i) occurs and the statute of limitations begins running when a deposit is initiated"); United States v. Li, 856 F. Supp. 421, 423-24 (N.D. Ill. 1994), aff'd, 55 F.3d 325 (7th Cir. 1995) (finding that for § 1956 offense, requiring proof of a financial transaction, the statute of limitations begins to run when the transaction was initiated).

In the First Superseding Indictment, the alleged monetary transactions occurred on September 2, 2003, June 17, 2003 and May 5, 2003, well within the five year statute of limitation. [Doc. 146, Counts Fifty-One-Fifty-Three, ¶ 26]. Defendant's attempt to trigger the running of the statute of limitations with the occurrence of the underlying specified unlawful activity is not based on any legal authority. The case cited by Defendant, United States v. Zvi, 168 F.3d 49 (2nd Cir. 1999), does not support Defendant's position. In that case, the superseding indictment first charging the money laundering counts at issue was returned on March 9, 1994. Id. at 53. The "international fund transfers" which constituted the financial transactions upon which the § 1956 charges were based occurred on May 17, 1988, July 28, 1988, September 1, 1988, September 23, 1988, November 11, 1988, and March 3, 1989. Id. Because the financial transactions charged occurred more than five years before the return of the superseding indictment, the charges were barred by the statute of limitations. Id.

25

at 54-55.   Nothing in the court's decision linked the running of the statute of limitations to the dates when the underlying criminal activity occurred.

The money laundering counts charged in the First Superseding Indictment are not barred by the statute of limitations.  Each monetary transaction, the event triggering the statute of limitations, occurred within five years of the return of the Indictment.

Defendant's argument that the statute of limitations has run for the mail fraud counts is based on her previously rejected claim that the charged mailings are not in furtherance of the scheme and artifice to defraud.  [Doc. 155 at 16-17].  "For purposes of mail and wire fraud, the five-year statute of limitations begins to run from the date of mailing of the fraudulent information."  United States v. Tadros, 310 F.3d 999, 1006 (7th Cir. 2002); see also United States v. Crossley, 224 F.3d 847, 859 (6th Cir. 2000) (same); United States v. Perholtz, 842 F.2d 343, 365 (D.C.C. 1988) (same).  The First Superseding Indictment, returned on February 20, 2007, charges mailings beginning on March 8, 2002, and continuing until August 6, 2004, all within the statute of limitations.  [Doc. 146, Counts Fifteen-Fifty, ¶ 25].

Whether those mailings were, as alleged in the Indictment, in furtherance of the mail fraud scheme is a question for the jury.  See Mulhall, 428 F. Supp. 2d at 85.  Assuming the mailings were in furtherance of the scheme, as required of the court at

26

this stage of the proceedings, see Salman, 378 F.3d at 1267-68; Torkington, 812 F.2d at 1354, and because the mailings are alleged to have occurred within five years of the return of the Indictment, the mail fraud counts are not barred.  Given the facial validity of the Indictment and the factual dispute between the parties, the issue of when the crime was committed - or in this case, completed - is more properly left for resolution at trial.  See United States v. Coia, 719 F.2d 1120, 1125 (11th Cir. 1983) (In reversing the district court's order granting a pretrial motion to dismiss an indictment for failure to comply with 18 U.S.C. § 3282, the court stated: "The district court should approach with delicacy and circumspection the question of whether to dismiss a case on the ground that, at trial, the proof, as a matter of law, would fail to establish the commission of the charged offense within the limitations period."); United States v. Tallant, 407 F. Supp. 878, 887 (N.D. Ga. 1975) (finding that an indictment alleging a violation within the limitations period was sufficient to withstand a pretrial motion to dismiss the indictment and that the issue of whether the charged conduct actually falls within that period is an evidentiary question for consideration at trial, the court denied a pretrial motion to dismiss the indictment).

The statute of limitations does not bar the mail fraud and money laundering counts in the First Superseding Indictment.

**d.    Multiplicity**

Finally, Defendant contends that the money laundering counts, Fifty-One through Fifty-Three, should be dismissed as multiplicitous.  Defendant argues that the money laundering counts charge the same conduct as alleged in violation of three of the mail fraud counts, Counts Thirty-Two, Thirty-Four, and Thirty-Six, because the same checks form the basis for both sets of counts.  [Doc. 158].  The Government opposes the motion to dismiss asserting that the charged money laundering counts and mail fraud counts are not multiplicitous and involve separate criminal activity for which multiple punishment may be imposed.  [Doc. 164].  The Government is correct.

"An indictment is multiplicitous if it charges a single offense in more than one count."  United States v. Howard, 918 F.2d 1529, 1532 (11th Cir. 1991).  There are two (2) potential vices associated with a multiplicitous indictment:  "'First, the defendant may receive multiple sentences for the same offense.  Second, a multiplicitous indictment may improperly prejudice a jury by suggesting that a defendant has committed several crimes–not one.'"  United States v. Smith, 231 F.3d 800, 815 (11th Cir. 2000) (quoting United States v. Langford, 946 F.2d 798, 802 (11th Cir. 1991)).  In order to determine whether the counts are multiplicitous, the court must determine

28

congressional intent by applying the test set forth in <u>Albernaz v. United States</u>, 450 U.S. 333, 101 S. Ct. 1137, 67 L. Ed. 2d 275 (1981).

The Eleventh Circuit Court of Appeals discussed application of that test in <u>United States v. Boldin</u>, 772 F.2d 719 (11th Cir. 1985):

> The starting point is the language of the provisions. If the offenses charged are in different statutes or in distinct sections of a statute, and each section clearly authorizes punishment for a violation, it is inferred that Congress intended to authorize punishment under each provision. . . . Next, we must determine whether the two offenses are sufficiently distinguishable from one another that a reasonable inference is that Congress intended to authorize multiple punishments. In making this determination, the <u>Blockburger</u>[4] test is used; if the court finds that each offense requires proof of a fact that the other does not, it should presume that multiple punishments are authorized. . . . The final step is to examine this presumption against the legislative history to determine whether a contrary congressional intention exists. If the legislative history either reveals an intent to authorize cumulation of punishments or is silent on the subject, the court should conclude that Congress intended to authorize multiple punishments. . . .

<u>Id.</u> at 729 (citations omitted). Thus, unless congressional intent requires a contrary result, a single act is subject to multiple charges under different statutory provisions so long as the statutes require proof of different statutory elements. <u>See</u> <u>United States v. LiCausi</u>, 167 F.3d 36, 46 (1st Cir. 1999); <u>Boldin</u>, 772 F.2d at 726 ("The <u>Blockburger</u>

---

[4]<u>Blockburger v. United States</u>, 284 U.S. 299, 304, 52 S. Ct. 180, 182, 76 L. Ed. 306 (1932).

test is applied by analysis of the elements of the offense charged, not by focusing on the evidence adduced at trial."). And, the test is satisfied despite substantial overlap of the evidence introduced on the separate offenses. See United States v. Felix, 503 U.S. 378, 386, 112 S. Ct. 1377, 1382, 118 L. Ed. 2d 25 (1992); United States v. West, 877 F.2d 281, 292 (4th Cir. 1989); Boldin, 772 F.2d at 726 ("Similarly, a substantial overlap in the proof offered to establish the crimes is not a double jeopardy bar.").[5]

Counts Thirty-Two, Thirty-Four, and Thirty-Six set forth specific mailings alleged to be in furtherance of the scheme and artifice to defraud Orthoscript of property and of Defendant's honest services. [Doc. 146, Counts Fifteen-Fifty, ¶¶ 14-25]. Specifically, the mailing of each check to pay Defendant's personal credit card debt, drawn on Orthoscript's bank account, is alleged to further the mail fraud scheme. The specific checks are identified as mailed on May 5, 2003, in the amount of $11,216.72, on June 17, 2003, in the amount of $12,451.75, and on September 2, 2003, in the amount of $13,058.30. [Doc. 146, Counts Thirty-Two, Thirty-Four, Thirty-Six, ¶ 25]. As previously stated, a "[m]ail fraud consists of the following elements: '(1) an

---

[5]The court notes that the thrust of Defendant's argument is directed at the alleged similarity in the evidence to be presented on the different counts in the indictment with no analysis offered regarding congressional intent or the statutory elements and proof required to establish a violation of each count.

intentional participation in a scheme to defraud a person of money or property, and (2) the use of the mails in furtherance of the scheme.'" <u>Sharpe</u>, 438 F.3d at 1263 (citation omitted).  In these counts, the mailing of the checks as part of execution of the scheme, not the amount or the source of the funds, is the focus of the criminal activity.

Counts Fifty-One through Fifty-Three allege specific monetary transactions, checks withdrawn, transferred and exchanged payable to Capitol One, in amounts in excess of $10,000, which consisted of property derived from specified unlawful activity, that is, the health care fraud scheme alleged earlier in the Indictment.  [Doc. 146, Counts Fifty-One-Fifty-Three, ¶ 26].  The checks, constituting the monetary transactions, are identified as dated on May 5, 2003, in the amount of $11,216.72, on June 17, 2003, in the amount of $12,451.75, and on September 2, 2003, in the amount of $13,058.30.  [<u>Id.</u>].  To prove a violation of § 1957 the evidence must establish that the defendant "'knowingly engaged or attempted to engage in a monetary transaction in criminally derived property that is of a value greater than $10,000 and is derived from specified unlawful activity.'"  <u>Johnson</u>, 440 F.3d at 1289.  In these counts, the mailing of the checks is entirely immaterial to proof of the crime, as is the issue of whether the mailed checks were in furtherance of the fraud scheme - in fact, the

31

scheme to defraud Orthoscript bears no relationship at all to the monetary transactions charged.

Not a single element which must be proved to establish either a violation of § 1341 or § 1957 is the same.  Mail fraud and money laundering are separate offenses. See United States v. Rude, 88 F.3d 1538, 1546 (9th Cir. 1996) ("It is well established, however, that money laundering and wire fraud are separate offenses."); United States v. Hart, 1992 WL 211579, *4 n.3 (E.D. La. August 19, 1992) ("The Court finds elements of the money laundering and 'dirty money' transaction provisions, 18 U.S.C. § 1956 and § 1957, clearly differ from the mail fraud statute.").  The offenses are charged in distinct statutes, with differing elements of proof, and each authorizes punishment for violations of those statutes.  Defendant offers no legal authority supporting a contrary conclusion.

"Money laundering is an offense to be punished separately from the underlying criminal offense. . . ."  Nolan, 223 F.3d at 1315.  Although the health care fraud scheme not the mail fraud scheme is the underlying criminal offense for the money laundering charges in this case, Defendant presents nothing establishing the conclusion stated in Nolan is not applicable to any other criminal conduct charged in an indictment.  And, Congress intended for separate punishments to be imposed for

32

money laundering offenses.  See United States v. Cantrell, 278 F.3d 543, 548 (6th Cir. 2001) ("We agree that Congress intended separate punishments for section 1957 offenses and for the 'specified unlawful activity' underlying the section 1957 offense."); United States v. Holmes, 44 F.3d 1150, 1154 (2nd Cir. 1995) ("Congress has clearly signaled its intent to treat money laundering . . . as an offense separate from the underlying criminal conduct that generated the laundered . . . funds.  It also intended to impose separate punishments for these offenses.").  Defendant offers no evidence of contrary Congressional intent as applied to the charges in this case.  See Boldin, 772 F.2d 729 ("If the legislative history either reveals an intent to authorize cumulation of punishments or is silent on the subject, the court should conclude that Congress intended to authorize multiple punishments. . . .").

The money laundering counts are not subject to dismissal for multiplicity.

**e.      Conclusion**

For the foregoing reasons and cited authority, the court **RECOMMENDS** that Defendant's motions [Docs. 155 and 158] to dismiss Counts Fifteen through Fifty-Three of the First Superseding Indictment be **DENIED**.

**2.      Bill of Particulars**

Defendant filed a motion for a bill of particulars seeking the identification of various individuals referred to but not identified in the Indictment [Doc. 156, Request Nos. 1, 2, 3, 4, 5, 7] and the identification of various items and materials, including, employment agreements, modes of delivery for mailings, and identifying financial institutions [Doc. 156, Request Nos. 6, 8, 9, 10]. Defendant contends, but for the most part provides no factually specific reasons in support of the contention, that this information is necessary for her to prepare a defense to the charged conduct. [Doc. 156]. The Government opposes the bill of particulars, although agreeing to provide some of the information requested, on the grounds that the requested information is already known to Defendant, is provided in discovery or is not relevant to the charged offenses. [Doc. 159].

"The purpose of a bill of particulars is to inform the defendant of the charge against [her] with sufficient precision to allow [her] to prepare [her] defense, to

34

minimize surprise at trial, and to enable [her] to plead double jeopardy in the event of a later prosecution for the same offense." United States v. Warren, 772 F.2d 827, 837 (11th Cir. 1985) (citing United States v. Cole, 755 F.2d 748, 760 (11th Cir. 1985)). "Generalized discovery is not the proper function of a bill of particulars." Id. (citing United States v. Colson, 662 F.2d 1389, 1391 (11th Cir. 1981)); see also United States v. Roberts, 174 Fed. Appx. 475, 477 (11th Cir. March 30, 2006) (same). While the court is "vested with broad discretion in deciding whether a bill of particulars should be granted," Cole, 755 F.2d at 760 (citations omitted), "'where an indictment fails to set forth specific facts in support of requisite elements of the charged offense, and the information is essential to the defense, failure to grant a request . . . may constitute reversible error[,]'" id. (quoting United States v. Crippen, 579 F.2d 340, 349 (5th Cir. 1978)).

As set forth in the discussion of Defendant's motions to dismiss, the charges in the Indictment not only track the statutory language of each charged offense but provide details, especially as to the nature of the alleged health care fraud and mail fraud offenses, discuss Defendant's role in the charged offenses, and specify dates and the manner and means by which the alleged offenses occurred. The Indictment is more

AO 72A
(Rev.8/82)

than a generalized charging document.  Defendant is adequately informed of the specific charges in the Indictment.

Additionally, in this case, the Government states that as to many of the requests made by Defendant, specifically Request Nos. 3, 5, 6, 7, and 10, the discovery materials provide the requested information.  [Doc. 159, at 8-10].  The court notes that the fact that discovery materials are provided to Defendant is an appropriate factor to consider in deciding whether a bill of particulars is warranted.  And, when the materials provided disclose the information being sought, a bill of particulars is not appropriate.[6]  See Roberts, 174 Fed. Appx. at 477 ("A bill of particulars is not required where the information sought has been provided by other sources, such as the indictment and discovery. . . ."); United States v. Al-Arian, 308 F. Supp. 2d 1322, 1359 (M.D. Fla. 2004) ("However, a bill of particulars is not typically warranted in so far as it seeks information already available through other sources.") (citing United States v. Rosenthal, 793 F.2d 1214, 1227 (11th Cir. 1986) ("Nor is the Defendant entitled to a bill of particulars with respect to information which is already available through

---

[6]Defendant seeks the identity of "another shareholder," Request No. 2, and of "Shareholder A," Request No. 4.  [Doc. 156].  The Government agrees to produce this information by letter to Defendant; accordingly, a bill of particulars is not necessary. [Doc. 159 at 9 & n.2].

other sources such as the indictment or discovery and inspection.")); see also United States v. Kunzman, 54 F.3d 1522, 1526 (10th Cir. 1995) (bill of particulars is not necessary when indictment is sufficiently specific and the defendant has access to the government's file); United States v. Caputo, 288 F. Supp. 2d 923, 925 (N.D. Ill. 2003) (same); United States v. Cooper, 283 F. Supp. 2d 1215 (D. Kan. 2003) (same).  The Government is not required to provide a bill of particulars as to Request Nos. 3, 5, 6, 7, and 10.

Furthermore, the Government contends, and the court agrees, that Defendant should already be well-aware of much of the information she seeks.  Defendant asks for the identities of shareholders and of owners, of which she was one, of the business entities referred to in the Indictment.  She also seeks the identity of "Person A" who is alleged to have been Defendant's close associate or, as the Government states, "significant other."  [Doc. 156, Request Nos. 3, 5, 7].  Given the nature of this information, it is doubtful Defendant could establish that, without the Government providing this evidence, she was not able to prepare a defense to the charged offenses or was surprised.  In a case where the evidence being sought by a bill of particulars will consist of activities in which a defendant participated or witnessed, "the defendant 'could hardly have been surprised by the government's proof at trial.'"  United States

37

v. Cantu, 557 F.2d 1173, 1178 (5th Cir. 1977) (quoting United States v. Pena, 542 F.2d

292, 293-94 (5th Cir. 1976)); see also United States v. Williams, 113 F.R.D. 177, 179

(M.D. Fla. 1986) (When the information sought involves "events in which one or more

of the defendants participated, or which occurred in one or more of the defendants'

presence[, t]he Eleventh Circuit has held that this sort of information need not be

furnished in a bill of particulars.") (citations omitted).  The court notes that, in fact,

most of the information sought by Defendant in the bill of particulars arguably falls

within this category.  The Government is not required to provide a bill of particulars

to Request Nos. 3, 5, 7.

However, to the extent Defendant seeks the identities of unindicted aiders and

abetters, Request No. 1, in the alleged crimes, that request will be granted.  See Al-

Arian, 308 F. Supp. 2d at 1359 (Bill of Particulars "is an appropriate way to discover

names of the unindicted co-conspirators who the government plans to use as witnesses

at trial."); Williams, 113 F.R.D. at 178 ("This Court has surveyed the recent decisions

of the Eleventh Circuit discussing motions for bill of particulars, and it appears to be

the common practice among courts in this circuit to grant such motions insofar as they

request a list of unindicted co-conspirators, at least when that information is not

otherwise known to the defendant(s)."). But see United States v. Perez, 2006 WL

v. Cantu, 557 F.2d 1173, 1178 (5th Cir. 1977) (quoting United States v. Pena, 542 F.2d

292, 293-94 (5th Cir. 1976)); see also United States v. Williams, 113 F.R.D. 177, 179

(M.D. Fla. 1986) (When the information sought involves "events in which one or more

of the defendants participated, or which occurred in one or more of the defendants'

presence[, t]he Eleventh Circuit has held that this sort of information need not be

furnished in a bill of particulars.") (citations omitted).  The court notes that, in fact,

most of the information sought by Defendant in the bill of particulars arguably falls

within this category.  The Government is not required to provide a bill of particulars

to Request Nos. 3, 5, 7.

However, to the extent Defendant seeks the identities of unindicted aiders and

abetters, Request No. 1, in the alleged crimes, that request will be granted.  See Al-

Arian, 308 F. Supp. 2d at 1359 (Bill of Particulars "is an appropriate way to discover

names of the unindicted co-conspirators who the government plans to use as witnesses

at trial."); Williams, 113 F.R.D. at 178 ("This Court has surveyed the recent decisions

of the Eleventh Circuit discussing motions for bill of particulars, and it appears to be

the common practice among courts in this circuit to grant such motions insofar as they

request a list of unindicted co-conspirators, at least when that information is not

otherwise known to the defendant(s)."). But see United States v. Perez, 2006 WL

1737449, *3 (S.D. Ga. June 19, 2006).  Each count of the Indictment includes a citation to 18 U.S.C. § 2, the aiding and abetting provision of the federal criminal code; however, the court notes that none of the counts specifically allege that Defendant was aided and abetted by or that she aided and abetted another person(s) in committing the charged offenses.  Whether Defendant acted alone or in conjunction with unnamed third persons is information necessary for preparing a defense.  The Government is only required to provide the identities of individuals who could have been, but were not, indicted in each count and is not required to provide any additional information at this time.

Finally, Defendant seeks information about the manner and means of mailing, that is, postal service or private/commercial carrier, used for each item identified in Counts Fifteen through Fifty of the Indictment, the mail fraud counts.  [Doc. 156, Request Nos. 8 and 9].  The Government correctly points out that it is only required to prove that the mails were used in furtherance of the mail fraud scheme, not the type of mail service.  See Sharpe, 438 F.3d at 1263 ("Mail fraud consists of the following elements: '(1) an intentional participation in a scheme to defraud a person of money or property, and (2) the use of the mails in furtherance of the scheme.'") (citation omitted); United States v. Yeager, 331 F.3d 1216, 1221 (11th Cir. 2003) ("Under 18

39

U.S.C. § 1341, a person who, having devised a scheme to defraud, mails any matter through the Postal Service or any commercial interstate carrier for the purpose of furthering or accomplishing that scheme, commits a federal offense. . . .”); United States v. Cazier, 2007 WL 1138938, *3 (D. Idaho April 17, 2007) (Rejecting the defendant's contention that change in language of superseding indictment as to means used for mailing broadened or substantially amended the § 1341 charge, the court stated, “The charge of mail fraud does not turn on the method of delivery.  What is required to satisfy the delivery element is that the ‘mails’ were used to carry out or attempt to carry out the scheme.”).  The mail fraud counts in the Indictment not only specify the particular mailings made in furtherance of the alleged scheme but they describe the scheme.  [Doc. 146, Counts Fifteen-Fifty, ¶¶ 14-25].

Defendant has not explained how the type of mail used is necessary for her defense to the charged offenses.  [Doc. 156].  Defendant is simply seeking evidentiary detail to which she is not entitled in a bill of particulars.  See Roberts, 174 Fed. Appx. at 477 (a bill of particulars “is not designed to compel the government to detailed exposition of its evidence”); United States v. Scrushy, 2004 WL 483264, *9 n.5 (N.D. Ala. March 3, 2004) (“[T]here is a difference between being surprised by the charge and being surprised by the evidence supporting a charge.  The function of the bill of

40

particulars is to reduce surprise at the *charge*, that is, to enable the defendant to identify what he is alleged to have done in violation of law.  It is not to eliminate surprise with respect to evidence offered in support of a charge that is clearly understood by the defendant.") (emphasis in original); <u>United States v. Giffen</u>, 379 F. Supp. 2d 337, 346 (S.D.N.Y. 2004) ("The ultimate test in deciding whether a bill of particulars should be ordered is whether the information sought is necessary, as opposed to helpful, in preparing a defense.").  The Government is not required to provide a bill of particulars as to Request Nos. 8 and 9.

For the foregoing reasons and cited authority, the court **GRANTS IN PART** and **DENIES IN PART** Defendant's motion [Doc. 156] for a bill of particulars.

## 3.    Conclusion

For the foregoing reasons and cited authority, the court **GRANTS IN PART** and **DENIES IN PART** Defendant's motion [Doc. 156] for a bill of particulars and the court **RECOMMENDS** that Defendant's motions [Docs. 155 and 158] to dismiss be **DENIED**.

There are no other pending matters before the Magistrate Judge, and the undersigned is aware of no problems relating to the scheduling of this case.

41

**IT IS THEREFORE ORDERED** and **ADJUDGED** that this action be and the same is hereby, declared Ready for Trial.

**SO ORDERED** this 1st day of May, 2007.

_____
JANET F. KING
UNITED STATES MAGISTRATE JUDGE

AO 72A
(Rev.8/82)